# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Lynn Conley, | Civ. No. 13-1069 (PAM/JJK) |
| Petitioner, | |
| v. | **REPORT AND** |
| Warden Michelle Smith, and The Attorney General of the State of Minnesota, | **RECOMMENDATION** |
| Respondent. | |

Daniel Lynn Conley, 153504, Stillwater Prison, 970 Pickett St. N., Bayport, MN 55003, *pro se*.

Matthew Frank, Esq., Jennifer R. Coates, Esq., Minnesota Attorney General's Office, and Peter R. Marker, Esq., Ramsey County Attorney's Office, counsel for Respondents.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

In this case Petitioner Daniel Lynn Conley seeks a writ of habeas corpus under 28 U.S.C. § 2254, and asks this Court to overturn his 2003 Minnesota state court convictions for first degree criminal sexual conduct, promotion of prostitution, and second degree assault in Ramsey County District Court.  Conley is currently serving consecutive terms of imprisonment on these convictions in the Minnesota Correction Facility in Stillwater.  In his Petition for a Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1, Pet.), Conley asserts that he is

1

entitled to the writ because his convictions and the imposition of his sentence were marred by a host of errors. Respondents have moved to dismiss the Petition (Doc. No. 11), and the District Court has referred this matter to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Respondent's motion to dismiss be granted, Conley's Petition be denied, and this action be dismissed with prejudice.

**FACTS**

Conley is an inmate at Stillwater Prison in Minnesota. (Pet. 1.) In 2003, a jury in Ramsey County, Minnesota, convicted Conley of first-degree criminal sexual conduct, third-degree criminal sexual conduct, second-degree assault, and solicitation to practice prostitution. The Ramsey County District Court sentenced Conley on all but the third-degree criminal sexual conduct charge. The facts of the case are detailed in four Minnesota Court of Appeals opinions that occurred as a result of Conley's conviction. *State v. Conley*, No. A03-1669, 2004 WL 2283421 (Minn. Ct. App. Oct. 12, 2004) (*Conley I*); *State v. Conley*, No. A07-1990, 2009 WL 233649 (Minn. Ct. App. Feb. 3, 2009) (*Conley II*); *State v. Conley*, No. A07-1990, 2009 WL 3172123 (Minn. Ct. App. Oct. 6, 2009) (*Conley III*); *State v. Conley*, No. A11-278, 2012 WL 360385 (Minn. Ct. App. Feb. 6, 2012) (*Conley IV*).

On March 22, 2003, Conley was living with his girlfriend, C.M.J., and her two young daughters in C.M.J.'s St. Paul apartment. When the children were

outside, Conley forced C.M.J. to take off her clothes. While she was in the process of doing this, her children came in and saw her partially undressed. Conley forced C.M.J. to continue undressing and told the children that they would hear their mother cry out but that she would be alright. By the time C.M.J.'s children went upstairs she was naked and crying.

Conley proceeded to sexually assault C.M.J. for approximately one hour as she cried out and asked him to stop. Over the course of the next day, Conley held C.M.J. hostage, threatened to kill her and her family members, attempted to force her into prostitution, and abused her repeatedly. On the evening of March 23, 2013, C.M.J. was able to leave the home long enough to notify the police. Her children were at home with Conley at this time.

As a result of his jury trial, Conley was convicted of all four charges against him. The Ramsey County District Court sentenced Conley to 300 months in prison for first-degree sexual conduct and consecutive sentences of 18 and 36 months for the respective prostitution and assault convictions. The 300-month sentence involved an upward durational departure from the presumptive guideline sentence at the time, which was 158 months.

Conley appealed his convictions to the Minnesota Court of Appeals. On appeal, Conley's counsel asserted that the district court had committed error by admitting evidence that had been obtained by an unconstitutional search, and the trial court abused its discretion by nearly doubling Conley's sentence for first-degree criminal sexual conduct in departing upward from the guideline range.

3

(Doc. No. 13, Resp't's App., Ex. 1.)  Conley also filed a *pro se* brief in which he argued that the timing of the probable-cause determination violated Minnesota law and that the prosecution failed to make timely disclosures as required by Minnesota Rule of Criminal Procedure 9.01.  (Resp't's App., Ex. 2.)  The court of appeals affirmed Conley's convictions but remanded his case on the sentencing issue.  Since *Blakely v. Washington*, 542 U.S. 296 (2004), had just been decided, the court of appeals remanded the case to the district court to decide "the applicability of *Blakely*, the relief it affords, and any further sentencing determination . . . ."  *Conley I*, 2004 WL 2283421 at *2.  The court of appeals also determined that the issues Conley raised in his *pro se* brief lacked merit.  *Id.*

Conley petitioned the Minnesota Supreme Court for further review. Conley's counsel again argued that the court of appeals erred in upholding the admission of evidence against Conley that was allegedly obtained in violation of his Fourth Amendment rights.  (Resp't's App., Ex. 5.)  Conley also submitted a motion to the Minnesota Supreme Court seeking permission to file a *pro se* supplemental petition for review.  (Resp't's App., Ex. 6.)  On December 22, 2004, the Minnesota Supreme Court denied the petition for review.  And on January 5, 2005, the court denied Conley's motion to file a *pro se* supplemental petition for review on grounds that Minnesota Rule of Criminal Procedure 29.04 does not permit a defendant represented by counsel to file a *pro se* petition for review. (Resp't's App., Ex. 8.)  As a result, the Minnesota Court of Appeals entered

judgment and remanded the case to the Ramsey County District Court. (Resp't's App., Ex. 9.)

On remand, the district court convened a sentencing jury to determine whether certain aggravating factors were present for purposes of sentencing. *Conley II*, 2009 WL 233649, at *1. Based on the evidence presented during this sentencing trial, the jury found that the only aggravating factor present in Conley's case was that the victim's children were present in the home during the assault. *Id.* More specifically, when asked, "Were [the victim's] children present in the home during the sexual assault?" the sentencing jury concluded that they were. *Id.* at *2. Based on this finding, the district court again sentenced Conley to 300 months in prison for first-degree criminal sexual conduct. *Id.* at *1.

Conley filed a second appeal, challenging the sentencing jury's finding and the district court's determination to impose the 300-month sentence, among other issues. Conley's counsel asserted that the form of the special verdict question was improper and that the district court abused its discretion in imposing the sentence. (Resp't's App., Ex. 10.) Once again, Conley filed a *pro se* supplemental brief asserting that his constitutional right to due process had been violated by inconsistent verdicts and that he had ineffective assistance of counsel. (Resp't's App., Ex. 11.) The Minnesota Court of Appeals affirmed Conley's sentence, determining that the form of the special verdict question was proper and that the district court did not abuse its discretion in imposing the

sentence.  The court of appeals also found the arguments raised in Conley's *pro se* brief "unavailing."  *Conley II*, 2009 WL233649, at *6.

Conley again petitioned the Minnesota Supreme Court for review of the court of appeals' decision.  The supreme court granted the petition for review and stayed proceedings pending its final decision in *State v. Vance*, 765 N.W.2d 390 (Minn. 2009).  (Resp. App., Ex. 16.)  In *Vance*, the Minnesota Supreme Court held that "[t]he mere presence of children in the home, absent any evidence that they saw or heard the offense, is not a substantial and compelling circumstance demonstrating that a defendant's conduct was significantly more serious than that typically involved in the commission of the offense."  *Vance*, 765 N.W.2d at 394.  On June 30, 2009, as a result of that holding, the Minnesota Supreme Court remanded Conley's case to the court of appeals to decide, consistent with *Vance*, whether the district court erred when it imposed an upward departure based on the sentencing jury's finding that children were present in the home. (Resp't's App., Ex. 17.)

On remand, the court of appeals concluded that "the special verdict interrogatory, which only required a determination of whether or not the children were in the home, was not specific enough to support an upward departure."  *Conley III*, 2009 WL 3172123, at *2.  The court also determined that the sentencing jury was not instructed according to the new requirements of *Vance*. *Id.*  As a result, the court of appeals remanded the case to the district court for another sentencing trial.  *Id.* at *3.

6

Both C.M.J. and Conley testified at the second sentencing trial.  At the conclusion of the trial, the sentencing jury determined that C.M.J.'s children actually witnessed the assault and that the presence of her children limited C.M.J.'s ability to escape or resist the assault.  (Resp't's App. 286–88, Ex. 22.)  Based on these findings, the district court sentenced Conley to 300 months in prison for the third time.  Conley again appealed this conviction to the Minnesota Court of Appeals, which affirmed Conley's conviction on February 6, 2012.  *Conley IV*, 2012 WL 360385, at *6.  In that appeal, Conley argued that the evidence was insufficient to support the *Blakely* jury's findings, that the 300-month sentence for his first-degree criminal sexual assault conviction was unsupported by the evidence, and that his sentence unduly exaggerated the criminality of his conduct.  *Id.* at *1.  The court of appeals rejected each of these arguments.  *Id.* at *3–5.  And it again rejected the arguments that Conley raised in a *pro se* supplemental brief, noting that they had all been waived because Conley failed to raise them before the district court.  *Id.* at *6.

Conley filed a petition for review with the Minnesota Supreme Court on March 6, 2012.  (Resp't's App., Ex. 26.)  The following day, the Minnesota Supreme Court Commissioner rejected Conley's petition for review because it improperly included a *pro se* supplemental petition in its appendix, but the Commissioner gave Conley seven days to submit a corrected petition.  (Resp't's App., Ex. 27.)  Conley submitted a corrected petition for review on March 13, 2012.  (Resp't's App., Ex. 28.)  In the corrected petition for further review, Conley

raised the following issues: (1) the admissible evidence was not sufficient to support the *Blakely* jury's findings; and (2) the aggravated 300-month sentence Conley received unfairly exaggerated the criminality of his conduct. (*Id.*) The Minnesota Supreme Court denied Conley's corrected petition for review on April 25, 2012. (Resp't's App., Ex. 29.) And on May 2, 2012, the Minnesota Court of Appeals entered judgment against Conley. (Resp't's App., Ex. 30.)

On May 7, 2013, Conley filed his Petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254.[1] (Doc. No. 1, Pet.) In his Petition, Conley raises the following eight grounds for overturning his conviction, asserting that each demonstrates he is in state custody in violation of the Constitution or the laws of the United States:

- First, Conley argues that his conviction was marred by the introduction of evidence against him that was obtained during a warrantless and unconstitutional search and seizure (Pet. at 17);

---

[1]     May 7, 2013 is more than one year after the Court of Appeals entered the final judgment following the Minnesota Supreme Court's decision not to exercise discretionary review. However, this does not mean that Conley's Petition is untimely under the one-year limitations period provided in 28 U.S.C. § 2244(d)(1)(A) (providing that the one-year limitation runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review). Under that law, Conley's conviction did not become "final" until ninety days after the Minnesota Supreme Court denied discretionary review on Conley's last appeal, which corresponds to the expiration of his opportunity to file a petition for certiorari to the United States Supreme Court. *See King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (explaining that the Supreme Court has jurisdiction to review judgments of a lower state court if the state court of last resort denies discretionary review, and that if the Court has jurisdiction, "the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system").

- Second, Conley contends that a Minnesota law that allows the district court to gather information for a presentence investigation report "to facilitate the application of the Minnesota Sentencing Guidelines," Minn. Stat. § 609.115, subd. 1(e), is contrary to the requirements of *Blakely v. Washington* (Pet. at 18);

- Third, Conley appears to assert that he is entitled to the writ because the trial court erred in imposing consecutive sentences for all three of his convictions in violation of the Minnesota Sentencing Guidelines. (*Compare* Pet. at 19 *with Conley II*, 2009 WL 233649, at *4–5 (discussing Conley's argument on appeal following remand));

- Fourth, Conley argues that the State violated his Fifth Amendment rights under the Double Jeopardy clause by allowing evidence as to the children's knowledge of the assault to be presented to the *Blakely* jury (*See* Pet. 20–21);

- Fifth, Conley contends that his convictions violated *Blakely* because he was constitutionally entitled to have a jury consider and decide whether his actions in the first-degree criminal sexual conduct, promotion of prostitution, and second-degree assault charges constituted a single behavioral incident (Pet. 21);

- Sixth, Conley appears to assert that his constitutional rights to due process and equal protection of the law, and the requirements of *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), were violated by an unreasonable delay in his probable cause hearing (*see* Pet. 22–23);

- Seventh and eighth, Conley argues that he is entitled to the writ on grounds that his convictions for first-degree and third-degree criminal sexual conduct following his first trial were the product of logically inconsistent verdicts (Pet. 23–24);

Respondents have moved to dismiss the Petition, arguing that all of

Conley's claims have either been procedurally defaulted because Conley did not

preserve them or fairly present them to the state courts, or alternatively, that his

claims fail on their merits. (Doc. No. 12, Resp't's Mem. in Supp. of Mot. to Dismiss 5–14.)

## DISCUSSION

### I. Legal Standards

#### A. AEDPA Standard

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).

The United States Supreme Court explained the meanings of the "contrary to" and "unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412–13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's

10

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

## B.    Exhaustion and Procedural Default

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quoting *Myre v. State of Iowa*, 53 F.3d 199, 200–01 (8th Cir. 1995) (quoting *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir. 1988))). A federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A

claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, *O'Sullivan*, 526 U.S. at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C. § 2254(c). A claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. *Coleman v. Thompson*, 501 U.S. 722, 730–34 (1991).

When a claim is procedurally defaulted in state court, the federal habeas court must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. *McCall*, 114 F.3d at 758 (citing *Coleman,* 501 U.S. at 750.). Prejudice need not be considered where a petitioner has failed to fulfill the cause prong of the test. *Id.* The miscarriage-of-justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person. *Id.* If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim. *See Carney v. Fabian*, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

## II. Conley's First Claim, Regarding an Alleged Fourth Amendment Violation, is Barred

Conley first argues that the trial court violated his Fourth Amendment right to be free from unreasonable searches and seizures by permitting evidence obtained in a warrantless search of his home to be admitted against him. (Pet. 17.) As Respondents point out, however, this claim, whether preserved by Conley throughout the direct appeal process or not, is barred from review in a habeas proceeding by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). There, the Court held:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 494. Here, although Conley suggests that he was denied a full and fair opportunity to litigate his Fourth Amendment challenge (Doc. No. 15, Pet'r's Reply Mem. 3), the record shows otherwise. Conley raised this claim at a pretrial *Rasmussen* hearing before the trial court, and on direct appeal, and in numerous *pro se* memoranda throughout his appeals process. (Resp't's App. 15–20, 29–30, 62, 68–69, 320–21.) Conley disagrees with the rulings he received, but that does not mean that the state courts denied him a full and fair opportunity to litigate the claim.

To the extent Conley contends that *Stone v. Powell* does not apply and he was denied a full and fair opportunity to litigate his Fourth Amendment claim on

13

grounds that the "prosecution failed to meet its burden of proving beyond a reasonable doubt that factually 'exigent circumstances' existed" to enter and search his home (Pet. 17), he misinterprets the law. Conley attempts to graft the standard for criminal convictions—i.e. beyond a reasonable doubt—onto the procedure for determining admissibility of evidence that the state has allegedly obtained in violation of the Fourth Amendment, but the government's burden to prove that an exception to the warrant requirement applies in a pre-trial suppression hearing is preponderance of the evidence. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (government bears burden of proving that an exception to the warrant requirement applies); *cf. United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005) (government bears burden of proving by a preponderance of the evidence that an assertedly consensual search was voluntary).

Finally, Conley may also believe that his Sixth Amendment right to a jury trial was violated because the trial court judge, rather than a jury, found that exigent circumstances justified the warrantless entry and search of his home. (*See* Pet. at 17 ("State district court failed to protect [Conley's] . . . right to 'trial by jury' determination of the existence of 'exigent circumstances' . . . .").) However, there is no right to have a jury make findings of fact concerning the reasonableness of searches and seizures. The reason that a judge decides if a search is reasonable or unreasonable is to evaluate whether a jury can be allowed to hear about any evidence that may have been obtained in an allegedly

14

unlawful search.  If a jury heard evidence about an allegedly unlawful search and the evidence that was found, the criminal defendant would lose the very protection a pre-trial hearing is designed to provide.

### III.   Conley's Second Claim, Regarding an Alleged *Blakely* Violation When the Sentencing Court Relied on a Presentence Investigation Report, Is Procedurally Defaulted.

In Conley's second claim, he asserts that the sentencing court violated his right to have a jury determine the facts related to any upward departure as required by *Blakely v. Washington*, 542 U.S. 296 (2004).  (Pet. 18; Pet'r's Reply Mem. 3.)  As best this Court can discern, Conley contends that his sentencing violates *Blakely* because he was required to participate in a mandatory Presentence Investigation Report ("PSI Report") under Minn. Stat. § 609.115 that gathered facts considered during his sentencing.  (*See* Pet. 18.)  He also appears to argue that being required to participate in the preparation of the PSI Report violated his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  (Pet. 18; Pet'r's Reply Mem. 3–4.)

However, Conley has procedurally defaulted these claims.  Conley did not raise these issues with any court until his third appeal was taking place following his second resentencing.  The first time Conley raised this issue was in his *pro se* brief during the third appeal. (Resp't's App. 322–23, Ex. 23.)  The Minnesota Court of Appeals concluded that all the issues Conley raised in his *pro se* brief during the third appeal were waived "[b]ecause none of these issues was raised in the district court . . . ."  *Conley IV*, 2012 WL 360385, at *6.  When a state

appellate court expressly declines to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim must be treated as a "procedurally defaulted" claim for federal habeas purposes. *See Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994) ("A federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule."). Here, the reason the Minnesota Court of Appeals in *Conley IV* declined to address the claim Conley makes in Claim Two of his Petition is that Conley failed to comply with a state procedural rule prohibiting the appellate courts from considering matters raised for the first time on appeal. *Conley IV*, 2012 WL 360385, at *6; *see Roby v. State*, 547 N.W2d 354, 357 (Minn. 1996) (holding that an appellate court will not consider matters not argued to and considered by the district court).

Further, the State of Minnesota's so-called *Knaffla* rule would bar Conley from raising that claim now in any state petition for post-conviction relief because this claim was one that was known, or could have been known, but was not raised at the district court level following his second appeal. Under Minnesota law, when a direct appeal has been taken, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Because Conley raised this claim in his direct appeal, but waived it by failing to

present it first to the district court, the *Knaffla* rule provides an independent and adequate state procedural rule precluding further litigation of the claim, and as a result, the claim is defaulted.

Conley has not made any attempt to show that this procedural default should be excused under the cause and prejudice exception or that the miscarriage of justice exception applies. For these reasons, Conley's second claim provides no basis for issuing the writ.

## IV. Conley's Third Claim, Concerning Alleged Error by the Trial Court for Imposing Consecutive Sentences on All Three Counts of Conviction, Lacks Merit.

In his third claim, Conley asserts that he is entitled to the writ of habeas corpus because the trial court committed error in imposing consecutive sentences on all three counts of conviction for a single behavioral incident in violation of the Minnesota Sentencing Guidelines. (Pet. 19–20.) In other words, Conley is asserting that the sentencing court erred in making his sentences consecutive for a single act because Minnesota law prohibits that type of sentencing. On its face, this claim cannot be the basis for federal habeas relief; it fails to allege that any violation of the Constitution or laws of the United States has resulted in Conley's custody. *See* 28 U.S.C. § 2254(a). "'Federal habeas corpus relief does not lie for errors of state law' . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations of state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citations omitted). For this reason, Conley's third claim provides no basis to issue the writ.

17

**V.  Conley's Fourth Claim, Regarding an Alleged Violation of the Double Jeopardy Clause by His Resentencing Hearings, Is Procedurally Defaulted.**

In Conley's fourth claim, he argues that the state court violated his Fifth Amendment rights under the Double Jeopardy clause by allowing evidence as to the children's knowledge of the assault to be presented to the *Blakely* jury.  (*See* Pet. 21.)  As with his second claim, this claim is also procedurally defaulted because Conley did not raise it until filing his *pro se* brief in his third appeal, and the Minnesota Court of Appeals deemed it waived for failure to comply with the state's procedural rule requiring preservation of issues for appeal.  *Conley IV*, 2012 WL 360385, at *6.  And any further state-court review of this claim is precluded by the *Knaffla* rule for the same reasons that the state courts will not hear Conley's second claim in a petition for postconviction relief.  Conley has not made any attempt to show that this procedural default should be excused under the cause and prejudice exception or that the miscarriage of justice exception applies. Accordingly, Conley's fourth claim presents no basis for this Court to recommend that the writ be issued.

**VI.  Conley's Fifth Claim, Regarding an Alleged *Blakely* Violation From a Sentencing Judge Deciding that Conley's Conduct was Not a Single Behavioral Incident, is Procedurally Defaulted.**

In his fifth claim, Conley alleges that his consecutive sentencing involved unconstitutional fact-finding by the sentencing judge in violation of *Blakely*.  (*See*

Pet. 21.)  Specifically, Conley argues that a sentencing jury should have made the determination that his conduct involved more than a single course of conduct rather than the sentencing judge.  (*See* Pet'r's Reply Mem. 8 (asserting *Blakely* argument); Resp't's App. 331–32, Ex. 23 (raising *Blakely* argument).)  However, like his second and fourth claim, Conley's fifth claim is procedurally defaulted. Conley raised this claim in his *pro se* brief during his third appeal to the Minnesota Court of Appeals, and in *Conley IV*, the court deemed this argument waived because Conley did not raise it before the district court.  *Conley IV*, 2012 WL 360385, at *6.  And the *Knaffla* rule bars any further review on a petition for postconviction relief in the Minnesota courts.  Conley has not made any attempt to show that this procedural default should be excused under the cause and prejudice exception or that the miscarriage of justice exception applies.

## VII.  Conley's Sixth Claim, Regarding an Alleged Failure to Provide a Probable Cause Hearing Within Forty-Eight Hours of his Arrest, Lacks Merit.

In his sixth claim, Conley argues that his constitutional rights to due process and equal protection of the law, and his rights established by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), were violated by an unreasonable delay in his probable cause hearing.  (*See* Pet. 22–23.)  In *McLaughlin*, the Court explained that generally states are required to provide an individual arrested without a warrant with a probable-cause determination within forty-eight hours of his arrest, unless some extraordinary circumstance requires a reasonable delay. 500 U.S. at 56–58.  Conley asserts that because he was not provided with a

probable cause hearing within forty-eight hours of his arrest, he is being held in custody in violation of the Constitution or laws of the United States.  (*See* Pet. 22–23; Pet'r's Reply Mem. 9–15.)

Conley raised this issue in his first appeal, and it was rejected by the Minnesota Court of Appeals.  *Conley I*, 2004 WL 2283421, at *2 ("Conley fails to show how his probable-cause determination was unreasonably delayed under *McLaughlin*" where he was arrested on March 24, 2003, the Complaint was signed on March 25, 2003, and he appeared in court on March 26, 2003).  Even if this Court assumes that Conley properly preserved this matter for habeas review, Conley has failed to show how this decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  And neither *McLaughlin*, nor any subsequent Supreme Court case, has clearly established that the proper remedy for a violation of the general *McLaughlin* rule is for the defendant to "'be set free.'"  *See Powell v. Nevada*, 511 U.S. 79, 84–85 (1994); *United States v. Chavez*, 705 F.3d 381, 385–86 (8th Cir. 2013) (explaining that "[d]ismissal is not the appropriate remedy for a *Gerstein* [the predecessor case of *McLaughlin*] violation").  For these reasons, Conley's sixth claim provides no basis for this Court to recommend that the writ be issued.

**VIII.** **Conley's Seventh and Eight Claims, Regarding Alleged Inconsistencies in the Verdicts, are Procedurally Defaulted.**

In his seventh and eighth claims, Conley argues that his convictions for first-degree and third-degree criminal sexual conduct following his first trial were the product of logically inconsistent verdicts. (Pet. 23–24.) Conley appears to have raised these claims for the first time in his *pro se* briefing during his final appeal. (*See id.* (discussing "special finding of fact" and "general" jury verdict and findings); Resp't's App. 337–38, Ex. 23 (same).) Although the Minnesota Court of Appeals deemed all of Conley's *pro se* arguments waived in its decision in *Conley IV*, it did not specifically discuss these claims. *See Conley IV*, 2012 WL 360385, at *6 (listing three specific *pro se* issues). The court further stated that "most of Conley's arguments are incomprehensible, making analysis impossible," but again it did not clearly refer to these claims in reference to any state procedural rule. *See id.* Procedural default rules apply only where "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Nonetheless, because no aspect of the court's decision in *Conley IV* regarding Conley's *pro se* arguments "fairly appear[s] to rest primarily on federal law or to be interwoven with federal law," this Court may not address the Petition under the *Harris* rule. *See Coleman v. Thompson*, 501 U.S. 722, 735, 740 (1991) (concluding that the procedural default rule was appropriately applied where a state court granted a state's motion to dismiss a prisoner's state habeas

petition because the motion only raised a procedural basis for dismissal indicating that it did not fairly appear that the state court's decision rested primarily on federal law).  Here, the only conclusion that can be drawn from the court's decision in *Conley IV* is that it was rejecting all of Conley's *pro se* arguments under the independent and adequate state rules concerning waiver of claims presented for the first time on direct appeal.  *See Conley IV*, 2012 WL 360385, at *6.

Moreover, there is another basis on which to conclude that Conley's seventh and eighth claims are barred by procedural default: he failed to fairly present the federal nature of these claims.  In addition to attempting to raise these claims in his *pro se* supplemental brief before the court's decision in *Conley IV*, Conley also attempted to raise these claims when he attached a *pro se* supplemental brief to the appendix of his counsel's brief in petitioning the Minnesota Supreme Court for further review.  (Resp't's App., 399–400, Ex. 26 (Conley's *pro se* arguments in appendix to brief in support of petition for review).)  However, Conley only once alerted the state courts to any possible federal nature of these claims by making an unclear reference to *Blakely* in his *pro se* supplemental brief to the court of appeals.  (Resp't's App. 338, Ex. 23.)  After making that single reference to *Blakely*, Conley failed to fairly present the federal nature of these claims by making any reference to a federal constitutional right, a federal case, or a state case applying federal law.  As a result, because Conley failed to fairly present any federal basis for these claims to the state courts, and

because these were claims that were presented during direct appeal, they are procedurally defaulted under the *Knaffla* rule. *See Knaffla*, 243 N.W.2d at 741.

As with his other procedurally defaulted claims, Conley has not made any attempt to show that this procedural default should be excused under the cause and prejudice exception or that the miscarriage of justice exception applies. For these reasons, Conley presents no basis to issue the writ in his seventh and eighth claims for habeas relief.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      The Petition (Doc. No. 1), be **DENIED**;

2.      Respondent's Motion to Dismiss (Doc. No. 11), be **GRANTED**;

3.      Conley's Motion in Response to Defendant's Motion to Dismiss (Doc. No. 15), be **DENIED**; and

4.      This action be **DISMISSED WITH PREJUDICE**.


Date: September 10, 2013

_ s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge


Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 24, 2013,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the

objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.